IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TYRONE FRANCIES,<br>BAXTER STREETS, and<br>GERALD MEACHUM | Case Nos. 1:16-cv-5531; 16-cv-7459; 16-cv-7460<br><br>Judge Charles R. Norgle |

## ORDER

Petitioner Francies' amended motion for post-conviction relief [23] is denied. Petitioner Streets' amended motion for post-conviction relief [23] is denied. Petitioner Meachum's amended motion for post-conviction relief [23] is denied.

## MEMORANDUM OPINION

Just over twenty years ago, three then-Chicago police officers—Tyrone Francies, Baxter Streets, and Gerald Meachum (collectively, "Petitioners")—were tried and convicted for conspiring with a drug dealer (and each other) to rob other purported drug dealers. Unbeknownst to Petitioners at the time, the victims of their plot on two occasions were not other criminals but rather undercover federal agents and a confidential informant. Overwhelming evidence against Petitioners was submitted to a jury at a joint trial, including days of relevant testimony and video and audio recording of a November 15, 1996 attempted robbery, which underlies the crucial conviction for purposes of this motion, as will be discussed at length below. During that November attempted robbery, the video shows Petitioners approaching the federal agent and confidential informant and, at gunpoint, ordering them out of their car before robbing them of $11,000, which they later divvied up among the conspirators. Petitioners carried out a similar

1

robbery on December 4, 1996, which netted the conspirators another $12,000 of FBI-planted money.

Following the trial, which spanned more than a month, Petitioners were each convicted of five felony counts: two counts of attempted robbery, in violation of 18 U.S.C. § 1951 (Hobbs Act) (Counts 3 and 4); conspiracy to injure, oppress, threaten, and intimidate persons in the exercise and enjoyment of their constitutional right to be free from deprivation of property without due process of law, in violation of 18 U.S.C. § 241 (Count 5); and two counts of using and carrying a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 6 and 7).

As noted, two of the convictions were for violations of 18 U.S.C. 924(c), an enhancing statute that criminalizes the use of a firearm in the commission of certain qualifying, or predicate, crimes and requires additional and consecutive punishment in the event of conviction. Section 924(c) convictions necessarily operate with a predicate—that is, the 924(c) conviction must be based on the conviction of some other qualifying crime plus the finding of the use and carrying of a firearm in the course of the predicate offense. Put simply, Section 924(c) is violated when the individual is convicted of the qualifying crime and the jury also finds that a firearm was used in the course of that qualifying offense.

For Petitioners, the jury was instructed that the Count 6 Section 924(c) violation could be predicated on Count 3 (attempted Hobbs Act robbery) or Count 5 (civil rights conspiracy). The jury was instructed that the Count 7 Section 924(c) violation could be predicated on Count 4 (attempted Hobbs Act robbery). The jury convicted Petitioners on both Section 924(c) counts. On June 9, 1998, the Court sentenced Francies to concurrent terms of 108 months on Counts 1, 3, 4 and 5; a consecutive term of 60 months on the § 924(c) charge in Count 6; and a consecutive term of 240 months on the § 924(c) charge in Count 7. On June 11, 1998, the Court sentenced

Streets to concurrent terms of 108 months on Counts 1, 3, 4 and 5; a consecutive term of 60 months on the § 924(c) charge in Count 6; and a consecutive term of 240 months on the § 924(c) charge in Count 7. On June 9, 1998, the Court sentenced Meachum to concurrent terms of 188 months' imprisonment on Counts 1, 3 and 4 and 120 months' imprisonment on Count 5; a consecutive term of 60 months' imprisonment on the § 924(c) charge in Count 6; and a consecutive term of 240 months' imprisonment on the § 924(c) charge in Count 7.

Petitioners now bring their second or successive motions to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255. Petitioners argue that because the residual clause in Section 924(c) has been invalidated by the Supreme Court's recent ruling in United States v. Davis, 139 S.Ct. 2319 (June 24, 2019), each of the two Section 924(c) convictions are invalid and Petitioners are entitled to immediate release. Petitioners make alternative arguments. First, that attempted Hobbs Act robbery is not a proper predicate offense now that the residual clause of Section 924(c) has been invalidated. Second, Petitioners argue that, even if attempted Hobbs Act robbery is a proper predicate offense, Count 6 must still be invalidated because the jury instruction at trial stated that the Count 6 924(c) predicate could be either the attempted Hobbs Act robbery or the civil rights conspiracy. Petitioners argue that because civil rights conspiracy is not a crime of violence, it is possible that the Count 6 Section 924(c) conviction was invalidly based on the use of a firearm during the commission of the civil rights conspiracy (as opposed to during the attempted Hobbs Act robbery on November 15, 1996).

The Government's chief counterpunches are (1) that attempted Hobbs Act robbery is a crime of violence under established Seventh Circuit precedent (a point that Petitioners concede), and (2) that any error as to the Count 6 jury instruction is subject to a harmless error analysis, which here shows that Petitioners were properly convicted of Count 6 for using their guns (their service guns nonetheless) during the commission of the violent attempted Hobbs Act robbery, and

3

any potential confusion arising from the alternative nature of the jury instruction was harmless. The Court agrees with the Government on both points and thus Petitioners' motions are denied.

## I. BACKGROUND

The facts at issue in this matter are well known to the Court. In the summer of 1996, a Confidential Informant ("CI") working with the FBI reported that he had become aware that Robert Meeks, a civilian drug dealer, was working with Chicago police officers to set up other drug dealers to rob them of their money and drugs. Subsequent investigation revealed that Petitioners were the officers to whom the CI referred.

In November 1996, the CI purchased heroin from Meeks—heroin Meeks had told the CI was from an earlier robbery committed by Meeks and Petitioner Meachum (a Chicago police officer). In the following weeks, Meeks encouraged the CI to help set up a robbery of other drug dealers. On November 14, 1996, the CI met with Meeks and Meachum to plan such a robbery. Pursuant to that plan, the next day, November 15, 1996, the CI and an undercover federal agent posing as a drug dealer went to a Jewel parking lot. The undercover officer brought $11,000 with him, purportedly for purchasing drugs. Shortly after their arrival, two police cars approached, one containing Petitioner Meachum and another officer and the other containing the other two Petitioners, Francies and Streets. Francies and Streets approached the vehicle, with guns drawn, and ordered the CI and agent out of the car. Streets then searched the car and located the money. At that point, as had been planned the day earlier, Streets "arrested" the CI, claiming there was an outstanding warrant on him. Petitioners allowed the undercover agent to leave freely.

On December 3, 1996, following several other recorded phone conversations, the CI met with Meachum and Meeks again to plan another robbery. The CI explained that the next day he would be meeting with another drug dealer who was going to be purchasing a half kilogram of cocaine for $12,000. Much like the first robbery, on December 4, 1996, Petitioners approached

the CI and a second undercover agent with guns drawn and ordered them out of the vehicle. Streets then recovered the money from within the car and acted as if he had also recovered a large bundle of cocaine. The undercover agent was allowed to leave the scene again, with Streets saying "I advise you to get the f--- out of here." Upon re-entering their police car, with the CI "under arrest" in the back seat, Streets stated, to the CI, "We're so f---in' smooth, ridiculous."

After each robbery, the proceeds were split amongst the defendants (including Meeks) and the CI returned his cut to authorities. Petitioners never reported the incidents or catalogued the money in evidence.

On March 12, 1997, a grand jury returned an indictment for Petitioners and Meeks, and bench warrants were issued the following day. A superseding indictment was filed on June 11, 1997. The charges in the superseding indictment were as follows:

- Count 1: Beginning in or about the summer of 1996 and continuing throughout on or about March 18, 1997, while employed as Chicago Police Officers, Defendants Meachum, Francies, Streets and Meeks did conspire to commit robbery; in violation of Title 18, U.S.C. §§ 1951 and 2;

- Count 2: On or about September 28, 1996, Defendant Meeks knowingly and intentionally distributed approximately nine grams of heroin; in violation of Title 21, U.S.C. § 842(a)(1);

- Count 3: On or about November 15, 1996, Defendants Meachum, Francies, Streets and Meeks attempted to commit robbery; in violation of 18 U.S.C. §§ 1951 and 2;

- Count 4: On or about December 4, 1996, Defendants Meachum, Francies, Streets and Meeks attempted to commit robbery; in violation of 18 U.S.C. §§ 1951 and 2;

- Count 5: From at least November 1996 through in or about December 1996, Defendants Meachum, Francies, Streets and Meeks, while acting under color of the laws of the State of Illinois and City of Chicago, did willfully conspire to injure, oppress, threaten and intimidate persons in the free exercise and enjoyment of a right secured to them by the Constitution and laws of the United States, that is to be free from the deprivation of property without due process of law; in violation of Title 18, U.S.C. §§ 241 and 2;

- Count 6: On or about November 15, 1996, Defendants Meachum, Francies, Streets and Meeks did knowingly use and carry a firearm during and in relation to the commission of a crime of violence, namely, the attempted robbery charged in Count 3;

- Count 7: On or about December 4, 1996, Defendants Meachum, Francies, Streets and Meeks did knowingly use and carry a firearm during and in relation to the commission of a crime of violence, namely, the attempted robbery charged in Count 4;

- Counts 8 & 9 omitted.

On November 18, 1997, a jury trial of all defendants began. At the conclusion of the trial, as relevant to Count 6 and the challenge presently at issue, the jury (which was also sent back with a copy of the superseding indictment) was instructed as follows:

> To sustain the charge in Count 6 of using or carrying a firearm in relation to a violent crime, the government must prove the following propositions:
>
> First, the defendant is guilty of the offense committed in either Counts 3 or 5 of the indictment.
>
> And second, on or about November 15th 1996, his co-conspirator used or carried a firearm during and in relation to the offense charged in Counts 3 or 5 in furtherance of or as a natural and foreseeable consequence of a conspiracy to commit the offense charged in Counts 3 or 5 at a time when the defendant was a member of the conspiracy to commit the offense charged in Count 1.
>
> If you find from your consideration of all the evidence that both the first proposition and one of the alternatives of the second proposition have been proved beyond a reasonable doubt with respect to a particular defendant, then you should find that defendant guilty of Count 6 of the indictment.

On December 22, 1997, guilty verdicts were returned, and Petitioners were sentenced on their respective convictions as follows:

- On June 9, 1998, Francies was sentenced to concurrent terms of 108 months on Counts 1, 3, 4 and 5; a consecutive term of 60 months on the § 924(c) charge in Count 6, and a consecutive term of 240 months on the § 924(c) charge in Count 7.

- On June 11, 1998, Streets was sentenced to concurrent terms of 108 months on Counts 1, 3, 4 and 5; a consecutive term of 60 months on the § 924(c) charge in Count 6, and a consecutive term of 240 months on the § 924(c) charge in Count 7.

- On June 9, 1998, Meachum was sentenced to concurrent terms of 188 months' imprisonment on Counts 1, 3 and 4 and 120 months' imprisonment on Count 5; a consecutive term of 60 months' imprisonment on the § 924(c) charge in Count 6; and a consecutive term of 240 months' imprisonment on the § 924(c) charge in Count 7.

Petitioners appealed, and their convictions and sentences were affirmed. United States v. Meachum, 182 F.3d 923 (7th Cir. 1999). On April 25, 2001, the Court entered an order denying Streets' § 2255 petition, finding that he raised the same issues in the petition that he raised on direct appeal and thus was not entitled to § 2255 relief. On July 21, 2016, the Seventh Circuit authorized Petitioners to file a second or successive § 2255 petition, in which they argued that the § 924(c) convictions ran afoul of the Supreme Court's decision in Johnson v. United States, 135 S.Ct. 2551 (2015) (invalidating the residual clause in the Armed Career Criminal Act). Pursuant to a government motion, Streets' case was stayed during the pendency of Sessions v. Dimaya, -- U.S. --, 138 S.Ct. 1204 (2018). After the Supreme Court issued its April 17, 2018 decision, this Court vacated the stay and ordered that briefing proceed. Petitioners filed a second amended motion for post-conviction relief on June 12, 2018.

Following the Supreme Court's decision in Davis, Petitioners moved for emergency bail, which this Court denied in an oral ruling on July 26, 2019. At the time of that oral ruling, the Court granted each side leave to file pleadings outlining any additional supplemental authority, noting that this area of the law appeared to be rapidly evolving. Neither party submitted additional authority. The Court thus now turns to a discussion of the issues.

## II. DISCUSSION

### A. Procedural Default and Waiver

As an initial matter, the Government argues that Petitioners have waived their right to challenge the Section 924(c) convictions at this juncture because they failed to argue, at the time

7

of trial, that the 924(c) convictions could not be predicated on attempted Hobbs Act robbery or criminal civil rights conspiracy. At that time, however, the law was clear that those crimes could serve as predicates under 924(c). It was only after the Supreme Court's Johnson decision in 2015, which overruled previous authority related to the residual clause, that opened the door for the challenge that Petitioners now bring. Petitioners argue that this previously erected "wall of precedent" supplies cause for Petitioners' failure to raise this defense at trial. The Court agrees and will thus address the merits of Petitioners' arguments.

**B. The residual clause in Section 924(c)(3)(B) has been invalidated**

Petitioners are correct to note that United States v. Davis, has invalidated the residual clause in Section 924(c). 139 S. Ct. 2319, 2336 (2019) ("We agree with the court of appeals' conclusion that § 924(c)(3)(B) is unconstitutionally vague."). Given this development, the question is thus whether the alternative statutory basis for applying the enhancement, the so-called "force clause" can support the relevant convictions. The "force clause" is laid out at 18 U.S.C. 924(c)(3)(A):

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]

The analysis for Count 7, which is predicated solely on attempted Hobbs Act robbery, is simple—if attempted Hobbs Act robbery is a crime of violence under the force clause, then the conviction is valid. The analysis for Count 6 is slightly more complex given the alternative nature of the instruction that was given to the jury. Assuming that attempted Hobbs Act robbery is a crime of violence and the civil rights conspiracy is not a crime of violence, the issue then becomes whether such an error requires reversal. This reversal analysis would take the form of a plain error

8

analysis centered on harmlessness. One of our sister District Courts has also adopted this approach to a markedly similar issue. See Johnson v. United States, No. CR-05-920-RSWL-1, 2019 WL 1790218 (C.D. Cal. Apr. 23, 2019).

**C. Attempted Hobbs Act robbery is a crime of violence**

Petitioners argue that attempted Hobbs Act robbery, which served as the sole predicate for the Count 7 Section 924(c) conviction and as an alternative basis for the Count 6 Section 924(c) conviction does not qualify as a crime of violence. If true, both of the 924(c) convictions would fail. Petitioners build this contention by first arguing that Hobbs Act robbery does not constitute a crime of violence and that, as a corollary, attempted Hobbs Act robbery is not a crime of violence. Petitioners point out that these propositions are contrary to established Seventh Circuit precedent which binds this Court, and note that "[o]nly by making this argument can [Petitioners] preserve [these] claims for further review." See Reply Briefing, 6.

The Court agrees with Petitioners' assessment of the current state of Seventh Circuit law. Recently, the Seventh Circuit addressed this question in United States v. Anglin, 846 F.3d 954 (7th Cir.), cert. granted, judgment vacated, 138 S. Ct. 126, 199 L. Ed. 2d 1 (2017). The judgment was vacated related to a different issue in Anglin, and the reasoning with respect to Hobbs Act robbery is consistent with the current status of the law. Specifically, the Court noted that "[t]he Hobbs Act defines robbery, in relevant part, as the taking of personal property 'by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property.' 18 U.S.C. § 1951(b)(1). Committing such an act necessarily requires using or threatening force." Anglin, 846 F.3d at 965. The Seventh Circuit noted that it joined "the unbroken consensus of other circuits to have resolved the question" of whether Hobbs Act robbery was a crime of violence within the meaning of Section 923(c)(3)(A)—holding that it is. Id. (citing United States v. Hill,

9

832 F.3d 135, 140–44 (2d Cir. 2016); In re St. Fleur, 824 F.3d 1337, 1340 (11th Cir. 2016); United States v. Howard, 650 Fed. App'x 466, 468 (9th Cir. 2016)).

Moreover, the Seventh Circuit has held that an attempt to commit a violent felony is itself a crime of violence. Hill v. United States, 877 F.3d 717, 719 (7th Cir. 2017), cert. denied, 139 S. Ct. 352, 202 L. Ed. 2d 249 (2018) ("When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony."). In the present case, then, the convictions for attempts to commit Hobbs Act robbery—a violent crime— is itself a crime of violence and thus a proper predicate for a Section 924(c) conviction.

As noted, Petitioners have presented arguments that (1) Hobbs Act robbery itself is not a crime of violence and (2) that an attempt should not be treated categorically as a crime of violence when the object is a violent offense. The Court does not pass on these arguments because the controlling law is resolved on these issues and as such the Court is bound to the aforementioned findings.

### D. The alternative jury instruction for Count 6 was harmless error

Petitioners argue that civil rights conspiracy is not a crime of violence. The Government does not address this issue and instead argues that even assuming the civil rights conspiracy is not a crime of violence, the conviction should stand because the faulty jury instruction is subject to a harmless error analysis. For purposes of deciding the present matter, the Court need not address whether the civil rights conspiracy is a crime of violence within the meaning of Section 924(c) because, even assuming it is not, any error in the alternative instruction on Count 6 was harmless. Put simply, if Petitioners (defendants at the time) had objected and the conspiracy count had been removed from the Count 6 instruction, the outcome would have been the same. In the Court's view, this is the only logical conclusion from the actual evidence presented in this case years ago.

As the Seventh Circuit noted during the direct appeal in this matter, "the evidence of guilt . . . is overwhelming, based on eyewitness testimony, recorded conversations (including recordings of robberies being committed and the immediate aftermath), and physical evidence, such as crack cocaine found in the officers' lockers)." United States v. Meachum, 182 F.3d 923 (7th Cir. 1999). The jury witnessed a video recording of Petitioners using firearms in the course of committing the November 15, 1996 attempted Hobbs Act robbery, which was the basis for the Count 3 conviction.

When an instruction is given which contains alternative theories of guilt, "one of which is invalid," and for which the jury returns a general verdict, "a plain error occurs." Yates v. United States, 354 U.S. 298, 318–327, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). A plain error will not result in reversal, however, unless "there is a reasonable probability that but for the error the outcome of the trial would have been different." United States v. Cardena, 842 F.3d 959, 997–98 (7th Cir. 2016) ("But even a jury-instruction error of constitutional dimension is subject to the familiar requirement that the error have harmed the defendant. . . . The analysis 'requires the same kind of inquiry' as harmless-error review, except that the burden is on the defendant to show prejudice. United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).") (several internal citations omitted).

Petitioners argue the pivotal question as to harmless error is "whether a jury finding that the defendants used or carried a gun in relation to the civil rights conspiracy would necessarily be premised on a finding that they used or carried a gun in relation to an attempted robbery." Pet. Reply Mot. for Bail, 3 (citing Sorich v. United States, 709 F.3d 670, 675 (7th Cir. 2013)). The civil rights conspiracy could be based on the finding of theft rather than a robbery, Petitioners continue, citing to the statutory definition, and "[i]f the jury found that the defendants used or carried a gun in connection with a conspiracy to deny civil rights by stealing under color of law,

11

its finding would not be premised on a finding that they attempted to rob." Id. Therefore, they conclude, because the jury could have potentially viewed the civil rights conspiracy as one with theft, rather than robbery, as its objective, "[a] jury finding that the defendants used or carried a gun in relation to a civil rights conspiracy involving theft did not need to rest on a finding that they used or carried a gun in relation to an attempted robbery." Id. at 4.

On the other hand, the Government argues the issue of harmlessness should be resolved in line with how a sister district court resolved the issue in Johnson v. United States, No. CR-05-920-RSWL-1, 2019 WL 1790218 (C.D. Cal. Apr. 23, 2019) (appeal pending). There, the court similarly addressed a § 2255 motion where the petitioner claimed the invalidity of a Section 924(c) conviction because it had been based on an alternative instruction as to the potential predicates. There, the jury had been instructed that the 924(c) conviction could be predicated on either Hobbs Act robbery or a conspiracy to commit Hobbs Act robbery. Id. at *6. Taking for granted that the conspiracy count could not be considered a crime of violence, the court conducted a harmless error analysis in which it considered the actual evidence that supported each predicate conviction and analyzed whether the jury rationally could have convicted under 924(c) with the conspiracy charge as a predicate. Id. at *7. After discussing the record, the Court concluded that the only rational explanation for the 924(c) conviction was that the jury believed the robbery itself, which was committed at gunpoint, was the predicate—not the conspiracy. Id.

The alternative instruction in this case was harmless error under either approach, and in any event the Petitioners have failed to carry the heavy burden on this harmlessness issue. Petitioners' theory that a jury could have viewed their activity as a conspiracy to commit a theft, as opposed to a conspiracy to commit a robbery, is unsupported by the record. The facts that Petitioners do cite to are simply a watered-down retelling of the very actions that led to the conviction on the Count 3 attempted robbery charge. See Pet. Reply Mot. for Bail, 3-4. Notably,

Petitioners omit any reference to their committing the crimes, as the Seventh Circuit put it, "at the points of their service revolvers." Meachum, 182 F.3d at *3. It stretches the bounds of rationality to think that a jury would convict Petitioners of an attempted robbery that took place at gun point in Count 3 and yet at the same time convict Petitioners of a civil rights conspiracy (predicated on the agreement to commit those gun-point hold-ups) to commit theft rather than the very robberies that the jury watched and heard about over the course of a month.

Moreover, the overwhelming, dramatic, and vivid evidence at trial was such that there is no doubt that the jury predicated its 924(c) Count 6 conviction on the November 15, 1996 attempted robbery. Petitioners have not carried their burden to show that they were prejudiced by this error in the instructions, nor could they given the facts of the case. Returning one last time to the Seventh Circuit's language, "If [Petitioners] did not want to risk the severe punishment for people who use weapons in multiple armed robberies, they should not have committed the crimes." Meachum, 182 F.3d at *2.

Petitioners make one final convoluted legal argument as to harmlessness revolving around the fact that they could have been convicted under either of two conspiracy charges for Count 3: "Since conspiracy is not a crime of violence, an attempt to rob, when based on a robbery conspiracy or a civil rights conspiracy, is not a crime of violence." See Pet. Reply Mot. for Bail, 5. The finds this argument has no merit for the same reasons discussed above. The only rational interpretation of the evidence at trial is that the jury based its conviction for the 924(c) count on the actual attempted robbery that was committed at gunpoint.

The Court denies Petitioners' request for a certificate of appealability.
IT IS SO ORDERED.

ENTER: *[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 28, 2019